UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MICHAEL E. MATHEWS,

                           Petitioner,

-vs-                                                      Case No.  8:04-cv-139-T-17EAJ

JAMES V. CROSBY, JR.,

                           Respondent.
_____/

## ORDER

    This cause is before the Court on Petitioner Michael E. Mathews' 28 U.S.C. § 2254

petition for writ of habeas corpus.  Mathews challenges his conviction and sentence

entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida,

in case no. 98-22341.

BACKGROUND

    On March 1, 1999, an information was filed charging Mathews with felon in

possession of a firearm, carrying a concealed firearm, and obstructing or opposing an

officer without violence.  (Ex. 1).  On September 15, 1999, the State filed a notice of its

intent to seek habitual felony offender and/or habitual violent  felony offender sentencing.

(Ex. 2).

    On October 20, 1999, Mathews filed a motion to suppress  evidence.  (Ex . 3).  On

January 27, 2000, a hearing was held on Mathews' motion to suppress.  (Ex.  4).  At the

end of the hearing, the trial court denied the motion to suppress.  (Ex. 4, p.  38).  On

February 28,  2000,  Mathews filed a motion to dismiss which was denied.  (Ex . 5).

A jury was selected on February 28, 2000 and trial was held on March 2, 2000,

before the Honorable Chet A. Tharpe, Circuit Judge.  (Ex. 6).  On March 2, 2000, the jury

found Mathews guilty as charged.  (Ex. 7).  Mathews was sentenced on April 4, 2000, to

thirty years incarceration as an habitual felony offender.  (Ex.  8).

## TRIAL EVIDENCE

Prior to trial, the State and defense stipulated that Mathews was a convicted

felon. (Ex. 6, p.  106).  Defense  counsel  argued  prior  to  trial  that  the State  should

not  be  permitted to present testimony that the gun was cocked.  (Ex. 6,  pp. 106 - 107).

The court ruled that ". . . there [sic] won't mention that  the gun was jammed or that there

was a bullet in the gun provided  that the argument is not made."  (Ex.  6, p. 108).

Deputy  LaBarge  testified  that  he  stopped  the  vehicle  Mathews was  riding  in,

approached  the  driver's  door,  and  asked  the  driver  for  his  license,  insurance,  and

registration.  (Ex. 6,  p. 134).  Within a minute, Deputy Johnson arrived on the scene and

approached the vehicle from the passenger side.  At that time,  LaBarge could see the

driver and the front seat passenger.  He was  aware that there was a back seat passenger,

but could not see him  because the window was tinted dark.  (Ex.  6,  p.  135).  Deputy

LaBarge then heard Deputy Johnson abruptly tell the back seat  passenger, Mathews, to

let him see his hands.  Deputy Johnson  said this three or four times, harshly, and it got

Deputy LaBarge's  attention.  (Ex. 6, p. 136).  Deputy LaBarge then told Mathews  to roll

the window down and Mathews complied.  Deputy LaBarge  observed a blue jacket on Mathews' lap.  (Ex. 6, p. 137).

Deputy LaBarge asked Mathews for identification and  Mathews could not provide any.  Deputy LaBarge  then asked  Mathews for his name and date of birth, and returned to his  vehicle to check for warrants.   The driver of the automobile had a suspended license and Mathews had given Deputy LaBarge an incorrect name and birth date. (Ex. 6, pp. 138, 140).  Deputy LaBarge then had Mathews exit the vehicle and sit in his patrol car. (Ex. 6,  p.  139). Mathews then provided his correct name and was arrested for resisting arrest without violence.  (Ex.  6,  pp.  140-141).  The  vehicle was searched and a firearm was located in the jacket in the  back seat.  (Ex. 6, p. 141).  Mathews had removed the jacket  from his lap and placed it to his right.  (Ex. 6, p. 142).  Deputy  LaBarge testified that he could not see any portion of the firearm  when the blue jacket was on Mathews' lap.  (Ex. 6, p. 14 7).  Deputy LaBarge testified that the gun was loaded with a magazine  with seven rounds.  (Ex. 6, p. 145).

On cross-examination, Deputy LaBarge agreed that the tint on  the windows was extremely dark, and that he never saw Mathews  holding an actual gun.  (Ex. 6, pp. 150-152).  Deputy LaBarge also  agreed that the rear passenger window was jammed, but stated that  it was halfway down.  (Ex. 6. p. 151).

On redirect, Deputy LaBarge testified that he read Mathews  his <u>Miranda</u> rights. (Ex.  6,  p.  164).  He then  questioned  Mathews about the firearm which had been found in the jacket.  Mathews stated that he bought the pistol from an unknown person and that he carried it for protection.  (Ex. 6, p. 165).

Deputy Johnson testified that the stop occurred at approximately 10:30 p.m. (Ex. 6, p. 167). Deputy Johnson testified that he approached the passenger side of the car and asked the passengers to place their hands where he could see them. Mathews was in the back seat. (Ex. 6, p. 169). The front seat passenger immediately complied with Deputy Johnson's request. Deputy Johnson could not see Mathews' hands. He kept asking Mathews to let him see his hands. Deputy Johnson looked in the rear window, which was halfway down. (Ex. 6, p. 170). He could see into the back seat and he observed Mathews holding a blue jacket and pulling it close to his body. The jacket was covering Mathews' hands and his hands were moving under the jacket. (Ex. 6, p. 171). Deputy Johnson then unholstered his weapon, held it by his leg, raised his voice, and repeated his commands for Mathews to let him see his hands. (Ex. 6, p. 173). Mathews eventually placed the jacket beside him and put his hands on the back of the front seat. (Ex. 6, p. 174). After Deputy LaBarge took names and identifications and went back to his vehicle, he returned and removed Mathews from the vehicle. (Ex. 6, pp. 174-175). Deputy Johnson searched the vehicle and discovered a firearm rolled up in the jacket Mathews had been holding. (Ex. 6, p. 175). Deputy Johnson testified that there was a magazine in the gun and bullets in the magazine. (Ex. 6, p. 176). The defense objected at this point, and the objection was overruled. (Ex. 6 , p. 176).

On cross-examination, Deputy Johnson testified that he never saw Mathews actually holding a gun. (Ex. 6, p. 179). Deputy Johnson agreed that the back window would not roll up or down, but stated that it was halfway down. (Ex. 6, p. 180). The gun was sent to FDLE for testing. (Ex. 6, p. 181). Deputy Johnson agreed that his supplemental report did

not mention anything about seeing Mathews with the jacket on his lap. (Ex. 6, p.183). It also did not mention that Mathews was playing with the jacket or fumbling with it. (Ex. 6, p. 183).

The court announced to the jury the stipulation between the State and the defense that at the time of the charged offense, Mathews had previously been convicted of a felony and his civil rights had not been restored. (Ex. 6, p. 195). The State then rested its case. (Ex. 6, p. 195). The prosecutor informed the court that Mr. Bryant, who had been listed as a defense witness, had refused to speak to him. (Ex. 6, p. 205). Defense counsel moved for a mistrial based on the State's eliciting evidence that the gun was loaded. The motion was denied. (Ex. 6, p. 209).

The defense called Deputy LaBarge and Deputy Johnson as witnesses. Deputy LaBarge testified that the jacket was not taken into custody. (Ex. 6, p. 213). Deputy Johnson testified that after he removed the gun from the jacket, he put the jacket back in the car. (Ex. 6, p. 214).

Helen Davis, Mathews' grandmother, testified that she had never been in the car and did not know what was in it. (Ex. 6, pp. 218-219).

Defense counsel attempted to ask Cynthia Marsh, Mathews' mother, whether she had any knowledge of the condition of Elliot Davis' car. The court ruled that the condition of the vehicle was not relevant. (Ex. 6, p. 222). Ms. Marsh then testified that there were a lot of clothes in the car. (Ex. 6, p. 223).

Mathews testified that he was wearing a black and orange jacket on the night he was arrested. (Ex. 6, p. 227). At the time of the stop, Elliot Davis was driving, Thornton

Davis was the front seat passenger, and Mathews was the rear seat passenger.  (Ex.  6, p. 237).  Mathews testified that the car had previously been  in an accident and that the rear passenger door would not open and  the window would not roll down.  (Ex. 6, p. 238).  Mathews  further testified that there was heavy tinting on the windows.  (Ex.  6, p. 239).  Deputy LaBarge asked Mathews his name and  Mathews said his name was Michael Davis.  (Ex. 6,  p.  242).  Mathews claimed that Deputy Johnson did not tell anyone to put their hands where he could see them.  (Ex. 6, p. 243).  Mathews denied that the vehicle had been speeding.  (Ex. 6,  p.  243).  Mathews denied having anything on his lap.  (Ex. 6, p. 244).  Mathews testified that he gave Deputy LaBarge another false name  while he was sitting in the back of the patrol car, but eventually  provided the correct name.  (Ex. 6, pp.  246,  249).  Mathews  testified that there were nine or ten police officers on the scene  by this time.  (Ex. 6,  p.  247).  Mathews denied making the statement attributed to him by Deputy LaBarge, and denied saying  that the gun was his.  (Ex. 6, pp. 247, 250).  Mathews testified  that he told Deputy Johnson that the gun was not his.  (Ex.  6, p.  252).  Mathews testified that he never touched the gun and that Deputy Johnson was holding the gun with a pen when he brought it  out of the car.  (Ex. 6, p. 255).  Mathews testified that the jacket belonged to Elliot Davis.  (Ex. 6, p. 255).

On cross-examination, Mathews  testified  that  when  the  deputy asked him a question about the gun, he responded by saying,  "Yeah, right."  (Ex. 6, p. 259).  Mathews testified that he had previously been convicted of a felony seven times.  (Ex.  6, p.  261).  The prosecutor then asked whether he had ever been convicted  of a crime involving

dishonesty, and Mathews replied that he had. (Ex. 6, p. 261). However, he subsequently stated that he had not. (Ex. 6, p. 262).

During closing argument, defense counsel attempted to argue that no fingerprints were found on the gun. However, the State's objections to the argument were sustained. (Ex. 6, pp. 280 - 281, 289). Defense counsel pointed out that the jacket had not been introduced into evidence, and stated that the jacket had been "given back to the owner, the people in the car, and it goes away or it just -- we don't know what happens to it. It's not in evidence." (Ex. 6, pp. 290, 296). Defense counsel extensively argued the deputies' credibility. (Ex. 6, pp. 278, 286, 291-295).

In response to defense counsel's attack on the deputies' credibility, the prosecutor made the following comment:

> And that's why they write reports. They write reports to help refresh their recollection. That's exactly what they do. I have nothing to hide. The officers have nothing to hide.

(Ex. 6, p. 299). An objection was overruled. The prosecutor later stated: "In the end they give back the jacket to Mr. Mathews to give to its rightful owner. Doesn't mean that Mr. Mathews didn't have that jacket and wasn't using that jacket to conceal that firearm." (Ex. 6, p. 303). When talking about Mathews' statement to Deputy LaBarge, the prosecutor stated, "You have heard a confession from the defendant, that he actually - - that it was his gun and he bought it for personal protection and carried it for the same." (Ex. 6, pp. 306 - 307).

The jury was instructed as follows on the offense of felon in possession of a firearm:

> Before you can find the defendant guilty of felon in possession of a

firearm, the State must prove the following two elements beyond a reasonable doubt.

One, Michael E. Mathews had been convicted of a felony. Two, after the conviction, Michael E. Mathews knowingly, A, owned or had in his care, custody, possession or control a firearm. And/or, B, carried a firearm which was concealed from the ordinary sights of another person.

(Ex. 6, pp. 309 - 310).  With respect to the charge of resisting an officer without violence, the jury was instructed as follows:

Before you can find the defendant guilty of resisting an officer without violence, the State must prove the following three elements beyond a reasonable doubt.

One, Michael E. Mathews obstructed or opposed Deputy Robert LaBarge. Two, at the time Deputy Robert LaBarge was engaged in the lawful execution of a legal duty. Three, at the time Deputy Robert LaBarge was an officer.

(Ex. 6, p. 312).

## PROCEDURAL HISTORY

Mathews appealed and his attorney, Alfonso M. Saldana, filed an initial brief raising two issues: 1) Whether the trial court erred when it denied Mathews' motion to suppress; and, 2) Whether the trial court erred by denying Mathews' motions for mistrial.  (Ex. 9).  The State filed an  answer brief arguing the merits.  (Ex. 10).  On November 16, 2001,  the state district court of appeal per curiam affirmed the conviction and sentence. (Ex. 11).  Matthews v. State,  803 So. 2d 729 (Fla. 2d DCA 2001).

On November 13, 2002, Mathews filed a motion for postconviction relief pursuant to Florida Rule of Criminal procedure 3.850. (Ex. 13). Mathews raised twenty-one allegations of ineffective assistance of trial counsel. Specifically, Mathews alleged that trial counsel was  ineffective for the  following twenty-one reasons:

1. Failing to call Elliot Davis, Thornton Davis, and five unknown officers as witnesses.

2. Failing to insure that the gun was test for fingerprints.

3. Failing to argue that evidence favorable to Mathews was intentionally tainted by seven police officers at the scene.

4. Failing to impeach the testimony of Officer Johnson concerning the back right window of Elliot Davis' car.

5. Failing to investigate and learn that the back window would not roll down and that the car could not be seen into because of heavy tinting.

6. Failing to call Maurice Bryant as a defense witness.

7. Failing to object or seek a new trial when the court failed to place the prospective jurors under oath prior to the voir dire examination.

8. Failing to argue at the suppression hearing that Mathews was not read his Miranda rights prior to his confession.

9. Failing to object to improper prosecutorial remarks during closing argument.

10. Failing to object when Mathews was tried on improperly joined charges after a timely motion for severance had been filed and granted.

11. Stipulating that Mathews was a convicted felon.

12. Failing to object each time the blue jacket was mentioned because the jacket itself was not introduced into evidence.

13. Failing to object to wording in the information stating that Mathews had previously been convicted of robbery.

14. Failing to ensure that Mathews was present at side bar for the peremptory challenges during jury selection.

15. Failing to object to misleading and confusing jury instructions.

16. Failing to object when the court relied on and used past juvenile felony convictions to enhance Mathews' sentence.

17. Failing to conduct redirect examination of Mathews.

18. Stipulating that Mathews was a convicted felon.

19. Failing to re-cross-examine Deputy LaBarge concerning whether he read the Miranda warnings to Mathews.

20. Failing to ensure that Mathews was present in open court or at a status conference concerning his motion for severance.

21. Failing to properly question defense witnesses Helen Davis and Cynthia Marsh.

On February 11, 2003, the state trial court denied the Rule 3.850 motion. (Ex. 14).

Mathews appealed and, on October 15, 2003, the state district court of appeal per curiam

affirmed the denial of postconviction relief. (Ex. 15). Mathews v. State, 866 So. 2d 1219

(Fla. 2d DCA 2003). Mandate issued on December 16, 2003. (Ex. 16). Mathews then

timely filed the present federal habeas corpus petition raising twenty-three grounds for

relief.  Grounds one and two are the same as the two issues  raised on direct appeal.
Grounds three through  twenty-three  are  the  same  twenty-one  claims  of  ineffective
assistance of trial counsel raised in the state postconviction  motion.

STANDARD OF REVIEW

Because Mathews filed his petition after April 24, 1996, this case is governed by 28
U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996
(AEDPA).  Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d
880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345,
1346 (11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of
state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order
to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given
effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see, Bell
v. Cone, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating
state-court ruling is highly deferential, which demands that state-court decisions be given
benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this
Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim
adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application, of clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Price v. Vincent</u>, 123 S.Ct. 1848, 1852-53 (2003); <u>Clark v. Crosby</u>, 335 F.3d 1303, 1308 (11th Cir. 2003); <u>Harrell v. Butterworth</u>, 251 F.3d 926, 930 (11th Cir. 2001).  "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. <u>Lockyer v. Andrade</u>, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is contrary to clearly established governing federal law.  <u>Mitchell v. Esparza</u>, 124 S.Ct. 7, 10 (2003); <u>Clark v. Crosby</u>, 335 F.3d at 1308-10; <u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  <u>Mitchell v. Esparza</u>, 124 S.Ct. at 10 (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).  <u>See</u> <u>also</u> <u>Price v. Vincent</u>, 123 S.Ct. at 1853; <u>Lockyer v. Andrade</u>, 538 U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell v. Esparza</u>, 124 S.Ct. at 10; <u>Parker v. Secy of Dept. of Corrections</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court

cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91. The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue were raised only as a state law claim in state court. Anderson v. Harless, 459 U.S. 4, 6-8 (1982).

In the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in Chapman v. California, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637. Although no constitutional error has occurred in Mathews's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

<u>No Presumption that State Court Ignored Its Procedural Rules</u>

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented.  <u>See Coleman</u>, 501 U.S. 722,  735-36 (1991);  <u>Kight v. Singletary</u>, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); <u>Tower v. Phillips</u>, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

DISCUSSION

A review of the record demonstrates that, for the following reasons,  Mathews is not entitled to habeas corpus relief.

Ground One

Mathews alleges that the trial court erred in denying his motion to suppress evidence and statements which he claims were obtained as the result of an unlawful  search and seizure.  Exhaustion of this ground by Mathews' litigation in his motion to suppress,  at the suppression hearing,  and on direct appeal precludes federal habeas corpus review  of the claim.  <u>See</u>  <u>Stone v. Powell</u>, 428 U.S. 465, 494-495 (1976) (where the state has provided an  opportunity for full and fair litigation of a Fourth Amendment  claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial). <u>See Mincey v. Head</u>,  206 F.3d 1106, 1125  (11th Cir. 2000). In <u>Mincey</u>, the Eleventh  Circuit stated:

> [f]or a claim to be fully and fairly considered by the state courts, where there
> are facts in dispute, full and fair consideration requires consideration by the

fact-finding court, and at least the availability of meaningful appellate review by a higher state court. Where, however, the facts are undisputed, and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims. <u>Tukes v. Dugger</u>, 911 F.2d 508, 513-14 (11th Cir.1990)(quoting <u>Morgan v. Estelle</u>, 588 F.2d 934, 941 (5th Cir. 1979)); <u>see also</u> <u>Hedden v. Wainwright</u>, 558 784, 786 (5th Cir. 1977)

206 F.3d at 1126.

The procedures in Mathews' case afforded him a full opportunity to develop the factual issues, the state court's findings are supported by the record, and the Florida appellate court gave full consideration to Mathews' claim. Moreover, Mathews' allegation of state court error in denying his motion to suppress does not suffice to avoid the <u>Stone</u> bar. See <u>Janecka v. Cockrell</u>, 301 F.3d 316 (5th Cir. 2002) ("The fact that Janecka may disagree with the district court's decision to overrule his objection is not sufficient to overcome the <u>Stone</u> bar," citing <u>Swicegood v. Alabama</u>, 577 F. 2d 1322, 1324 (5th Cir. 1978) (holding that the <u>Stone</u> bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim)). Accordingly, <u>Stone</u> bars federal habeas review of Mathews' substantive Fourth Amendment Issue. <u>See Bradley v. Nagle</u>, 212 F.3d 559 (11th Cir. 2000) (federal courts are precluded from conducting postconviction review of Fourth Amendment claims where state courts have provided "an opportunity for full and fair litigation" of those claims).

Ground one does not merit habeas corpus relief.

Ground Two

Mathews alleges that the trial court erred in denying Mathews' motions for  mistrial based on the introduction of evidence that the firearm was loaded and on a  statement by the prosecutor that the prosecutor and police officers  had nothing to hide.  These claims were raised on direct appeal in state court and the state appellate court affirmed.

In Florida, as in the federal courts, the decision on whether to grant a mistrial lies within the sound discretion of the trial judge.  See Messer v. Kemp, 760 F.2d 1080, 1087 (11th Cir. 1985) (citing United States v. Brooks, 670 F.2d 148, 152 (11th Cir.  1982), cert. denied, 457 U.S. 1124 (1982)).   In the absence of an abuse of discretion,  this Court should not intervene.   Florida law likewise holds that the decision to grant a motion for mistrial is committed to the sound  discretion of the trial court and should be declared only when the error is so prejudicial and fundamental that it denies the accused a fair trial. Buenoano v. State,  527 So. 2d 194  (Fla.  1988).  Mathews cannot show that either the admission of evidence that the gun was loaded or the prosecutor's remark was so prejudicial as to deny him a fair trial.  Consequently, there was no violation of Mathews' constitutional rights.

With regard to the claim that a mistrial should have been granted based on the introduction of evidence that the gun was loaded, Mathews has not shown that the introduction of evidence  that the gun was loaded deprived him of a fair trial.  "Federal courts do not sit to review evidentiary questions. "  Mercado  v.  Massey,  536 F. 2d 107 (5th Cir. [1976] 1979).  However, where a state court's ruling is claimed to have deprived a defendant of his right to due process, a federal court should then "inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the

criminal trial . . . " <u>Osborne v. Wainwright</u>,  720 F.2d 1237, 1238 (11th Cir. 1983) (quoting

<u>Hills v. Henderson</u>, 529 F.2d 397, 401 (5th Cir.), <u>cert. denied sub nom</u>. <u>Hills v. Maggio</u>

, 429 U.S. 850 (1976). <u>See also</u>, <u>Leverett v. Spears</u>, 877 F.2d 921 (11th Cir. 1989);

<u>Shaw v. Boney</u>, 695 F. 2d 528  (11th Cir. 1983).   Mathews has not shown that the

introduction of evidence that the gun was loaded deprived him of a fair trial,  has not shown

that the state trial court abused its discretion in denying his motion for mistrial, and has not

met the standard for granting habeas relief in this case.

With regard to the prosecutor's comment that neither he nor the  officers  had

anything to hide, the  comment  was  not  so  prejudicial as to deny Mathews a fair trial.

In <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986),  the United States Supreme Court

noted that  "it is not  enough that the prosecutors' remarks were undesirable or even

universally condemned. . . The relevant question is whether the prosecutors' comments so

infected the trial with unfairness as to make the resulting conviction a denial of due

process."   Like the petitioner in <u>Darden</u>, Mathews was not deprived of a fair  trial  because

the prosecutor's comment "did not manipulate or misstate the evidence, nor did it implicate

other specific rights of the accused such as the right to counsel or the right to remain

silent." <u>Darden</u>, 477 U.S. at 181-182.  The prosecutor's remarks,  even if improper, were

harmless considering the evidence against Mathews at trial.

The result reached by the state court with respect to this claim was neither contrary

to, nor an unreasonable application of, clearly established federal  law.

Ground two does not warrant habeas corpus relief.

Ground Three

Mathews alleges that his attorney was ineffective for failing to call Elliot Davis, Thornton Davis, and five unknown police officers as witnesses. Mathews asserts that Elliot Davis would have testified that he was the driver and owner of the car, that the blue jacket belonged to him, that the gun belonged to him, that he wrapped the gun in the jacket and placed it in the back seat, and that Mathews did not touch the jacket or the gun. Mathews further asserts that Elliot Davis would have testified that he was not speeding and did not have a brake light out, that Mathews did not confess to ownership of the gun, that five unknown patrol officers arrived during the stop, that one of the officers questioned Mathews about robberies, that the officers passed the gun around, that he (Elliot Davis) was not arrested and released on his own recognizance as testified to by deputies LaBarge and Johnson, and that he told Deputy LaBarge that the gun was his. Mathews asserted that Thornton Davis would have provided essentially the same testimony as Elliot Davis. Mathews further asserted that the five unknown police officers would have testified in accordance with the testimony of Elliot and Thornton Davis. The state trial court found that the testimony would merely have corroborated testimony already heard by the jury and that Mathews had failed to establish any prejudice by his attorney's not calling these witnesses.

The clearly established federal law which applies to a claim of ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984). According to Strickland, in order to prevail on such a claim, Mathews must prove that: (1) his counsel's performance was deficient; and (2) he sustained prejudice as a result. To show deficient performance, Mathews must show that his trial counsel's performance was not reasonable

under prevailing professional norms.  To show prejudice, Mathews "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In the instant case, Mathews has shown neither deficient performance nor prejudice and is entitled to no relief.

This claim was raised as ground one in Mathews' state postconviction motion. The state trial court found that Mathews had failed to demonstrate prejudice. The result reached by the state court with respect to this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Of all the testimony which Mathews claims the witnesses would have given, the only testimony which might have been of any benefit to the defense would have been testimony that Mathews did not touch the jacket.  However, because Elliot Davis was talking to Deputy LaBarge and providing his identification to Deputy LaBarge, it is unlikely that the jury would have believed that Mr. Davis could have known whether Mathews touched the jacket while LaBarge was speaking to Davis. As for the five unknown police officers, they may well have arrived after Mathews set the jacket aside.  This leaves only Thornton Davis, who may or may not have been in a position to see whether Mathews touched the jacket.  However, Mathews has not shown that Thornton Davis would have been a credible witness or that there is any reasonable probability that the jury would have believed his testimony over that of the officers.  Thus, he has not shown that there is a reasonable probability that the outcome of the trial would have been different had Thornton Davis been called to testify and has not shown the prejudice required to entitle him to relief on a claim of ineffective

assistance.  The result reached by the state court with respect to this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

Furthermore, Mathews has not shown deficient performance of counsel. As stated in Strickland v. Washington, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  104 S.Ct. at 2065-66.

There are many reasons, including a credibility assessment, why counsel may have chosen not to call Elliot or Thornton Davis as witnesses.  Mathews has not shown deficient performance or prejudice and is entitled to no relief on ground three.

Ground Four

Mathews alleges that his attorney was ineffective for failing to insure that the gun was tested for fingerprints.  As noted by the state trial court in its order denying relief, the deputies acknowledged at trial that they never saw Mathews actually hold or touch the gun.  Thus, evidence that Mathews' fingerprints were not on the gun would merely have corroborated the deputies' testimony.  The state trial court, therefore, properly found that Mathews had shown no prejudice resulting from any failure to have the gun tested for fingerprints.  Moreover, he has shown no deficient performance because there was no reason for defense counsel to have the gun tested for fingerprints when there was no claim that Mathews ever actually touched the gun.  The result reached by the state trial

court with respect to this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

Ground four does not warrant habeas corpus relief.

### Ground Five

Mathews alleges that his attorney was ineffective for failing to argue that evidence favorable to Mathews was intentionally tainted by seven police officers at the scene. Mathews asserts that Deputy LaBarge, Deputy Johnson, and five unknown police officers handled the gun at the scene, thereby destroying any fingerprint evidence. The state trial court found that whether Mathews actually handled the gun was not an issue at trial and that Mathews had failed to show any prejudice from the alleged destruction of evidence. For the reasons stated under ground four, this holding was correct and was neither contrary to, nor an unreasonable application of, clearly established federal law.

Ground five does not warrant habeas corpus relief.

### Grounds Six, Seven, and Twenty-three

In grounds six, seven, and twenty-three, Mathews alleges that his attorney was ineffective for failing to impeach the testimony of Officer Johnson concerning the back right window of Elliot Davis' car, and failing to call or properly question witnesses to prove that the window would not roll down and that the officer could not see into the car because of heavy tinting on the windows. Mathews asserts that, inconsistent with Deputy Johnson's testimony that the back window was halfway down, Elliot Davis' car had been in an accident sometime prior to the stop and that the back window would not roll down.

Mathews asserts that defense witnesses Helen Davis and Cynthia Marsh, who

testified at trial, would have testified that the window would not roll down, and would have contradicted Deputy Johnson's testimony that he was able to see into the car, had they been properly questioned, and that Elliot and Thornton Davis would have testified that the window would not roll down had they been called to testify.

The state trial court, in denying these claims, noted that counsel told the jury in opening statement that they would hear evidence that the rear passenger window was heavily tinted, was stuck, and would not roll down, that counsel did attempt to impeach Deputy Johnson by questioning him about differences between his trial testimony and details in his supplemental report, and that Deputy Johnson acknowledged that the window was stuck, but testified that it was stuck in the open position. The court also noted that Helen Davis was questioned about the vehicle and stated that she knew nothing about the condition of the vehicle and that counsel attempted to question Cynthia Marsh about the condition of the vehicle but was prevented from doing so by the trial court.

As noted by the state trial court, defense counsel attempted to question Cynthia Marsh about the condition of the vehicle, but was not permitted to do so. Therefore, it is unlikely that the trial court would have allowed such questioning of any other witness and defense counsel was not deficient in failing to call other witnesses in a futile attempt to elicit such testimony. Furthermore, Mathews himself testified that the vehicle had been in an accident and that the back passenger window would not roll down. Thus, any other testimony to this effect would merely have been cumulative to Mathews' testimony. Mathews has not shown that there is a reasonable probability that the outcome of the trial would have been different had counsel called further witnesses to testify to the

same effect, and thus, has failed to demonstrate the prejudice required to support an ineffective assistance claim. The state trial court's denial of relief on these claims was neither contrary to, nor an unreasonable application of, clearly established federal law.

Grounds six, seven, and twenty-three do not warrant habeas corpus relief.

### Ground Eight

Mathews alleges that his attorney was ineffective for failing to call Maurice Bryant as a defense witness. Mathews asserts that counsel did interview Mr. Bryant, but decided not to call him as a witness because he was a convicted felon. Mathews asserts that Mr. Bryant would have testified that the rear right window would not roll down, that the car could not be seen into because of the heavy tint, and that he observed the five unknown police officers handle the gun. The state trial court found that Mathews had failed to demonstrate any prejudice resulting from a failure to call Maurice Bryant as a witness. The result reached by the state court with respect to this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

As shown in ground six, any testimony relating to the condition of the window would not have been permitted by the state trial court. Furthermore, such testimony would merely have been cumulative to Mathews' testimony. Several witnesses, including the deputies, testified that there was heavy tint on the windows, Thus, testimony to this effect would also have been cumulative. Testimony that unknown officers handled the gun, thereby destroying fingerprint evidence would have been irrelevant because there was never a claim that Mathews touched the gun. Mr. Bryant's testimony would not have been beneficial to the defense and defense counsel was not ineffective for not calling Mr.

Bryant as a witness.   Moreover, Mathews has not shown that  there is a reasonable probability that the verdict would have been different had Mr. Bryant been called to testify.

Ground eight does not warrant habeas corpus relief.

### Ground Nine

Mathews alleges that his attorney was  ineffective for failing to object or seek a new trial when the  court failed to place the prospective jurors under oath prior to  the voir dire examination.  Mathews has shown neither deficient  performance nor prejudice with respect to this claim.  "In many Florida courts, the preliminary oath is administered  to the venire in a jury assembly room,  before the jurors are  questioned about their legal qualifications and before they are divided into smaller groups tor questioning in individual cases."  Lott v. State, 826 So. 2d 457, 458 (Fla. 1st DCA 2002).  "[T]he oath  is sometimes given to the venire in another courtroom in the presence of a different court reporter."  Pena v. State, 829 So. 2d  289, 293  ( Fla . 2d DCA 20O2).  Although there is nothing in the  record which indicates that the prospective jurors were sworn by  the  trial  judge,  there  is  also  nothing that refutes  the  possibility  that  they were  sworn  prior  to being  sent  to  the  courtroom. Because the jurors may in fact have been sworn, and  because defense counsel may have known this, Mathews has failed  to show any deficient performance.  See Lott v. State,  457 (Fla. 1st DCA 2002);  Haves v. State, 855 So. 2d 144 (Fla. 4th DCA  2003).  Furthermore, because Mathews has not alleged that any of the prospective jurors gave answers which were untruthful, he has  not shown any prejudice.

### Ground Ten

Mathews alleges that his attorney was ineffective for failing to argue at the suppression hearing that Mathews was not read his <u>Miranda</u> rights prior to his confession. Mathews asserts that counsel should have demonstrated that the <u>Miranda</u> warnings were read by an unknown officer, not Deputy LaBarge. The state trial court denied relief, finding that Mathews was read his rights prior to questioning about the gun. Mathews has demonstrated neither deficient performance nor prejudice with regard to this claim.

Deputy LaBarge testified at the suppression hearing that he read the <u>Miranda</u> rights to Mathews prior to any questioning about the gun. Mathews has not shown that there was any unknown officer who would have testified that the <u>Miranda</u> rights were not read and has shown no deficient performance on the part of counsel. Furthermore, even if there were an officer who would have so testified, Mathews cannot demonstrate prejudice because he cannot show that the trial judge would have believed the unknown officer over Deputy LaBarge and would have ruled differently at the suppression hearing had such testimony been presented.

Ground ten does not warrant habeas relief.

Ground Eleven

Mathews alleges that his attorney was ineffective for failing to object to improper prosecutorial remarks during closing argument. Mathews asserts that the prosecutor stated in closing argument that LaBarge saw the gun and that this statement was not supported by the evidence. Mathews further asserts that the prosecutor improperly stated, "You have heard a confession from Mathews - that it was his gun and he bought it for personal protection and carried it for the same." Mathews asserts that the jury heard no such

confession, although he admits that the jury heard Deputy LaBarge testimony concerning Mathews' statement to him that he had bought the gun from an unknown person and carried it for protection.  Mathews further complains of the prosecutor's comment that Mathews gave the deputies a false name  and later gave deputies his correct name. Mathews points out that it was only Deputy LaBarge to whom he spoke, not Deputy Johnson.  Finally,  Mathews complains about the comment, "in the end, they gave back the jacket to defendant to give to its rightful owner."  Mathews  asserts that this statement implied that Mathews recently had  the jacket in his possession.  Mathews further asserts that  there was no testimony about what happened to the jacket and that the prosecutor's remark was  therefore  not  supported  by  the  evidence.  The state trial court denied relief, finding that although some of the prosecutor's remarks were not factually accurate, they did not rise to the level of prejudicing Mathews and Mathews had shown no deficiency on the part of counsel.  The result reached  by the state trial court with respect to this claim was neither contrary  to, nor an unreasonable application of, clearly established federal law.

Even if there were any prosecutorial statement that Deputy LaBarge saw the gun., the statement was not so prejudicial as to deny Mathews a fair trial. The prosecutor's statement about a confession was clearly supported by the evidence that Mathews told Deputy LaBarge that he had  bought the gun and carried it for protection.  The prosecutor's comment that Mathews gave the deputies, rather than just Deputy LaBarge, a false  name and  later  the  correct  name,  was  not  prejudicial.  The prosecutor's comment that the deputies gave the jacket back to Mathews to give to the rightful owner was not  intended

to imply recent possession by Mathews, but rather to explain that the jacket was not confiscated as evidence and,  although the evidence at trial showed that the jacket was left in  the vehicle, not  that it was given to Mathews,  this minor  factual inaccuracy was not so prejudicial as to deny Mathews a  fair trial.

Ground eleven does not warrant habeas corpus relief.

## Ground Twelve

Mathews alleges that his attorney was  ineffective for failing to object when Mathews was tried on improperly-joined charges after a timely motion for severance had  been filed and granted.  The state circuit court found that the offenses were properly joined for trial and that Mathews had shown no deficient performance on the part of counsel. The court also found that a motion for severance had not been filed.  The  court was incorrect in finding that a motion for severance had not  been filed.  A motion for severance was filed on September 22,  1999. (Ex. 17).  The motion to sever offenses was granted on October 18, 1999 (See Doc. No. 24, Ex. A).  However, Mathews is  not entitled to relief on this claim because he  can show no  prejudice from the fact that the offenses were tried together.

The only basis for severance would have been that the State was required to prove a prior felony conviction for one of the offenses but not the others and that the evidence concerning   the prior felony conviction should not be admitted in a trial of the other offenses.  However, Mathews testified at trial and admitted seven prior felony convictions.  Therefore, the evidence  relating to a prior felony conviction introduced to prove the  charge of felon in  possession of  a firearm,  which  evidence  consisted simply of a stipulation that Mathews had previously been convicted  of a felony, was not prejudicial.  Moreover,

Mathews has not shown that there is a reasonable possibility that he would have been found not guilty of any of the charges had they been tried separately. Thus, he has not shown the prejudice required under Strickland.

Ground twelve does not warrant habeas corpus relief.

Grounds Thirteen and Twenty

Mathews alleges that his attorney was ineffective for stipulating that Mathews was a convicted felon. Mathews asserts that the stipulation prevented the offenses from being severed for trial. The state trial court denied relief on these claims, finding that Mathews had failed to show any prejudice. The result reached by the state court with respect to this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Because Mathews has not demonstrated that he was not previously convicted of a felony, or that the State would have been unable to prove that he was previously convicted of a felony, he cannot establish prejudice based on the stipulation and is not entitled to relief. Contrary to Mathews' claims, a stipulation to a prior conviction would not prevent severance. Moreover, as shown in ground twelve, Mathews can show no prejudice resulting from the charges being tried jointly.

Grounds thirteen and twenty do not warrant habeas corpus relief.

Ground Fourteen

Mathews alleges that his attorney was ineffective for failing to object each time the blue jacket was mentioned because the jacket itself was not introduced into evidence. The state trial court found that whether the jacket was introduced into evidence had no bearing on whether Mathews was convicted of gun possession and that Mathews had

shown no prejudice. Testimony concerning the jacket was not improper and the State was not required to introduce the jacket into evidence. Therefore, there was no basis for an objection and Mathews has failed to demonstrate deficient performance. Furthermore, he has not shown a reasonable probability that objections would have been sustained or that the outcome of the trial would have been different had counsel objected. Thus, he has shown no prejudice. Whether testimony concerning the jacket was proper is a question of state law and Mathews has not shown that such testimony was inadmissible under state law or that such testimony denied him a fair trial.

Ground fourteen does not warrant relief.

## Ground Fifteen

Mathews alleges that his attorney was ineffective for failing to object to wording in the information stating that Mathews had previously been convicted of robbery. The state trial court found the information properly alleged that Mathews had previously been convicted of robbery as a predicate for the offense of felon in possession of a firearm and that Mathews had failed to show prejudice. Mathews has not shown that there was any basis for an objection. Thus, he has not demonstrated deficient performance. Furthermore, he has not shown that there is a reasonable probability that the outcome of the trial would have been different had the nature of the previous felony not been mentioned in the information. Thus, he has shown no prejudice.

Ground fifteen does not warrant habeas corpus relief.

## Ground Sixteen

Mathews alleges that his attorney was ineffective for failing to ensure that Mathews was present at side bar for the peremptory challenges during jury selection. In Florida, although a defendant has a right to be present in the courtroom, and to consult with his attorney, during the exercise of peremptory challenges, he does not have the right to be present at the bench conference when peremptory challenges are exercised. See Florida Rule of Criminal Procedure 3.180; Wike v. State, 813 So. 2d 12 (Fla. 2002). This procedure does not violate any federal constitutional right of Mathews. Although a defendant has a right to be present during critical stages of his trial, there is no violation of this right where the defendant is present in the courtroom, has the ability to communicate with his counsel, and his counsel attends any bench conferences. See Kilmartin v. Dormire, 161 F. 3d 1125 (U. S. 8th Cir. 1998). Presence is not required at the site of juror challenges where the defendant was present during voir dire and when the strikes were given effect. See United States v. Gayles, 1 F.3d 735, 738 (8th Cir. 1993); Williams v. Kemna, 311 F.3d 895, 898 (8th Cir. 2002). There is no constitutional requirement that the defendant be physically present at the bench when peremptory challenges are exercised. Mathews had shown no right to be present at the bench conference, no basis for an objection, and no deficient performance on the part of counsel.

Ground sixteen does not warrant habeas corpus relief.

### Ground Seventeen

Mathews alleges that his attorney was ineffective for failing to object to misleading and confusing jury instructions. Specifically, Mathews contends that the instructions given for the crime of felon in possession of a firearm incorrectly required the jury to find three

separate elements rather than two.  Mathews cannot show prejudice because any error in requiring the State to prove a third element could only work to Mathews' benefit.  Moreover, the record shows that  the jury was actually instructed as follows:

> Before you can find the defendant guilty of felon in possession of a firearm the State must prove the following two elements beyond a reasonable doubt.

> One, Michael E. Mathews had been convicted of a felony. Two, after the conviction, Michael E. Mathews knowingly, A, owned or had in his care, custody, possession or control a firearm. And/or, B, carried a firearm which was concealed from the ordinary sights of another person.

(Ex. 6, pp. 309 - 310).  This instruction required the State to prove all of the elements of the charged offense.  Although the second  element was expressed in alternative terms, this did not deprive Mathews of any constitutional right and he can show neither deficient performance nor prejudice based on the lack of an objection by counsel.

Mathews further argues that it was improper to instruct the jury that Mathews was charged with resisting an officer without violence when in fact he was charged with obstructing or opposing an officer. Again, Mathews can show neither deficient performance nor prejudice.  The crime of resisting arrest without violence is defined in Section 843.02, Florida Statutes.  That  statute provides that it is unlawful to  ". . . resist, obstruct, or oppose any officer. . . without offering or doing violence to the person of the officer. . . ." The information charged Mathews  with a violation of section 843.02. (Ex. 1).  Although the  information referred to the offense as obstructing or opposing an officer, it is clear that Mathews was charged with a violation of section 843.02, resisting an officer without violence.  Thus,  the jury instruction was not improper, there were no grounds for an objection, and Mathews has shown no deficient performance on the  part of counsel.

Furthermore, he has not shown that the result of the proceeding would have been different had the trial court referred to the offense as obstructing or opposing an officer rather than resisting an officer.  Thus, he has shown no prejudice.

Finally, Mathews asserts that it was confusing and misleading to instruct the jury that they could find Mathews guilty as charged or guilty of a lesser included offense when there were no lesser included offenses listed on the verdict form.  Mathews has demonstrated no prejudice relating to this claim because he has not shown that there is a reasonable probability that the outcome of the trial would have been different had the judge not mentioned lesser included offenses.

Ground Seventeen does not warrant habeas corpus relief.

Ground Eighteen

Mathews alleges that his attorney was ineffective for failing to object when the court relied on and used past juvenile felony convictions to enhance Mathews' sentence. Mathews contends that he was sentenced as an habitual offender based on two felony convictions from 1988, at which time he was a juvenile.  The state trial court denied relief , finding that Mathews' prior convictions were not juvenile convictions.  The state trial court attached the 1988 judgments and sentences to its order denying relief.  These documents show that the 1988 convictions were not juvenile convictions.  Although Mathews may have been a juvenile at the time of the offenses that resulted in those convictions, the convictions were not juvenile convictions.  Mathews has shown neither deficient performance nor prejudice and is entitled to no relief.

Ground eighteen does not warrant habeas corpus relief.

-32-

Ground Nineteen

Mathews alleges that his attorney was ineffective for failing to conduct redirect examination of Mathews. Mathews asserts that he testified on cross-examination that he had previously been convicted of a crime involving dishonesty, but that this was inaccurate and that he was thinking of his seven previous felony convictions. The state trial denied relief on this claim, finding that counsel had objected twice when Mathews was questioned about crimes of dishonesty and that Mathews had failed to establish prejudice. The attachments to the circuit court's order denying relief show that Mathews had at least one previous robbery conviction. Robbery is a crime of dishonesty. Thus, Mathews' answer was accurate and there was nothing for counsel to rehabilitate on redirect examination. Mathews has shown neither deficient performance nor prejudice and is entitled to no relief. Ground nineteen does not warrant habeas corpus relief.

Ground Twenty-one

Mathews alleges that his attorney was ineffective for failing to re-cross-examine Deputy LaBarge. On redirect, Deputy LaBarge testified that he read the <u>Miranda</u> warnings to Mathews. Mathews asserts that Deputy LaBarge did not read the Miranda warnings and that defense counsel should have conducted further examination on this point. Mathews has not shown that any further examination of Deputy LaBarge would have effectively impeached him or contradicted the testimony already given. Therefore, he has not shown either deficient performance or prejudice.

Ground twenty-one does not warrant habeas corpus relief.

Ground Twenty-two

-33-

Mathews alleges that his attorney was ineffective for failing to ensure that Mathews was present in open court or at a status conference concerning his motion for severance. Mathews has not demonstrated that he had any constitutional right to attend such a hearing

Mathews had a due process right to be present at proceedings relating to his criminal prosecution, ". . . to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v. Massachusetts, 291 U.S. 97, 108 (1934). See also United States v. Gagnon, 470 U.S. 522 (1985). "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome **if his presence would contribute to the fairness of the procedure."** Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (emphasis added). Mathews has not shown how his absence from any hearing on the motion for severance thwarted a fair and just hearing or how his presence would have contributed to the fairness of the hearing. A defendant has no constitutional right to be present for proceedings involving purely legal matters. See Provenzano v. Singletary, 3 F. Supp. 2d 1353, 1377 (M.D. Fla. 1997) (holding that hearing on motion to dismiss and suppression hearing "involved essentially legal argument, and there was no constitutional right to be present at such proceedings."); cf. In re Shriner, 735 F.2d 1236 (11th Cir. 1984) (no constitutional right to be present at the bench during conferences that involved purely legal matters). See also United States v. Burke, 345 F.3d 416 (6th Cir. 2003) (finding no constitutional right to be present at pretrial suppression hearing). Mathews has demonstrated no right to be present, no deficient performance on the part of counsel, and no prejudice.

Ground twenty-two does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Mathews' petition for writ of habeas corpus is denied, with prejudice.  The Clerk

is directed to enter judgment against Mathews and to close this case.

ORDERED in Tampa, Florida, on  December 29, 2005.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record

Michael E. Mathews